## Marzolf Unemployment Compensation Case.

Argued April 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Benjamin W. Haseltine, Jr.,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY FLOOD, J., June 13, 1962:

The claimant appeals from a decision of the Unemployment Compensation Board of Review holding him ineligible for benefits under section 402(b)(1) of the Unemployment Compensation Law, 43 PS §802(b)(1), on the ground that he voluntarily left work without cause of a necessitous and compelling nature.

The claimant had been employed as a heater in a steel mill for thirty-four years. He testified that several months before September 20, 1961, his sixty-fifth birthday, he began to feel unduly fatigued by his duties which involved the operation of grappling hooks weighing from fifty to seventy pounds. He concluded that the work involved in the job of heater was "getting too heavy" for him. Although he knew he could retire on pension at age sixty-five or he could go on working past that age, provided he requested and passed a quali-

fying physical examination, he did not request any physical examination. Instead, he made numerous requests to be assigned to lighter work. When he was told that no lighter work was available and that he had to continue working as a heater or retire, he voluntarily retired.

At the first hearing the referee questioned the claimant as follows: "Q. Mr. Marzolf, you say this matter of grappling hooks weighing as much as 75 pounds and your other duties became such that it fatigued you? A. That is 100 per cent correct. Q. Did you consult a doctor about your problem of your health? Did you talk to a doctor? A. Oh, we had to go in occasionally to the doctor anyway. Q. Did you go to your own doctor about it? A. At home? Q. Yes, sir, your own doctor, your personal physician? A. Oh, yes, but I didn't tell him that. I have a family physician but I didn't walk in and say, 'I work too hard and don't feel good.' I didn't do that. Q. You felt your ownself without needing to consult a doctor that your work was getting too heavy for you? A. That is exactly correct."

The referee, finding that the claimant could no longer perform the duties required of him, reversed the Bureau of Employment Security and awarded the claimant compensation. Both the employer and the bureau appealed.

At a remand hearing ordered by the Board of Review the claimant admitted that he did not consult the company doctor for an examination. He testified that he had no occasion to do so because "[t]hey knew I had a double rupture . . ." Although he testified that he was no longer able to work as a heater because of his double hernia, he admitted that the rupture had occurred some time ago, "possibly three years ago". When asked why the rupture had had no effect on his work during the intervening years, the claimant stated that it did, that one doctor had recommended a belt

after the first rupture, that he obtained a brace after the second rupture, and that, when another doctor subsequently asked him why he did not have an operation, he replied, "I will tell the truth, I am afraid to have an operation." When he was asked whether or not there ever had been a determination by the plant doctor that he was unable to continue in his regular job, the claimant answered: "No, but they knew it. I told them four or five months before that, that I cannot continue to do this work . . ." Finally, although he had testified at the first hearing that he had not consulted his family physician concerning the effect of his work on his health, he submitted at the remand hearing a purported certificate from his family physician stating that the claimant had been troubled with "some low back pain" during the past three years and that "during September, 1960" the physician had advised him "to make an effort to obtain work at his Factory which was a little less strenuous".

The Board of Review reversed the referee and denied compensation upon findings that continuing work was available to the claimant, had he desired to remain employed, that the claimant did not consult a physician, and that he voluntarily terminated his employment merely because he felt the work was too heavy for a man of his age.

Since the claimant voluntarily terminated his employment the burden rests upon him to show cause of a necessitous and compelling nature for doing so. *Johnson Unemployment Compensation Case,* 182 Pa. Superior Ct. 138, 125 A. 2d 458 (1956). Where the claimant does not consult a physician his unsupported statement that the work adversely affects his health is insufficient, of itself, to establish good cause for leaving. *Molton Unemployment Compensation Case,* 194 Pa. Superior Ct. 190, 166 A. 2d 103 (1961); *Zielinski Unemployment Compensation Case,* 174 Pa. Superior Ct. 244,

101 A. 2d 419 (1953). The board's finding that the claimant here did not consult a physician is amply supported by the claimant's own testimony. Furthermore, the certificate offered lacks probative force because it nowhere states that the claimant was unable to perform his regular work or that such work would be injurious to the claimant's health. Under the circumstances the board properly ignored the purported physician's certificate. *Johnson Unemployment Compensation Case,* supra. In the absence of any credible evidence corroborating the claimant's statement that the work which he had regularly been doing was injurious to his health, the board properly held that the claimant failed to sustain his burden of proof.

*Filchock Unemployment Compensation Case,* 164 Pa. Superior Ct. 43, 63 A. 2d 355 (1949), and *Pusey Unemployment Compensation Case,* 159 Pa. Superior Ct. 571, 49 A. 2d 259 (1946), are distinguishable. In the *Pusey* case the company's own work records disclosed that the claimant was unable to do the type of work offered to her because she had a nervous condition and was subject to St. Vitus Dance. In the *Filchock* case a hernia forced the claimant to leave his work as a coal loader. He received medical treatment, returned to his employer two weeks later seeking lighter work and submitted at that time a doctor's certificate stating that he was unable to do his customary work but was able to perform light work. In the case before us the claimant continued to perform his regular duties despite his previous double hernia, he did not consult a physician in connection with his alleged fatigue, and he produced no credible evidence, aside from his own statement, that he was no longer able to perform his regular work.

Decision affirmed.