381 A.2d 132

**Walter E. DEISS, Appellant,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1977.

Decided Dec. 23, 1977.

548

Michael A. Donadee, Edward Van Stevenson, Jr., and Richard E. Gordon, Pittsburgh, for appellant.

Sydney Reuben, Charles G. Hasson, Asst. Attys. Gen., Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from an order of the Commonwealth Court, affirming the decision of the Unemployment Compensation Board of Review, which affirmed the action of the referee in denying benefits to appellant, Walter E. Deiss.

Appellant was employed by the Canada Dry Corporation until he was laid off on December 5, 1974. On January 6, 1975, petitioner accepted a job with the Gordon Service Terminal Company (Gordon). His job was to remove molded plastic bottles from a production line and place them into shipping boxes. On January 10, 1975, appellant terminated his employment. It was appellant's contention that he left his employment for a "cause of necessitous and compelling nature" and thus remained eligible for benefits under § 402(b)(1) of the Unemployment Compensation Law, 43 P.S. § 802(b)(1). According to appellant, he had no choice but to

terminate his employment with Gordon because of the anxiety and emotional stress which were caused by the pressures of working on a production line.

When appellant first appealed to the referee, he did not have an attorney. However, by the time of the hearing before the board, he had secured an attorney from Neighborhood Legal Services, who petitioned for a remand for a second hearing before a referee. At the second hearing, appellant presented the testimony of Edward Wimberly, a psychotherapist for the Northern Communities Mental Health and Mental Retardation Center (the "McClure Center"), the community mental health program in appellant's neighborhood. According to the witness, appellant had been a patient at the McClure Center for over a year at the time he left the employ of Gordon. According to Wimberly, appellant had a longterm psychiatric problem which he called "a character disorder." The witness said that appellant was "an awfully sincere and capable person, he is very meticulous . . . he cares very much for people and for himself. He is a perfectionist in ways of things that he does, he wants everything to be just so, not only the things he does but his life, his relationship with people, his parents. Often he is a very hard taskmaster about that."

Wimberly further testified that he was familiar with reports of the Bureau of Vocational Rehabilitation[1] which indicated that appellant would not be suited for work which required either fine motor co-ordination or close social interaction. When asked how Wimberly would expect appellant to perform in a job which required fine motor co-ordination, the witness replied:

"I think that it would frustrate him very much and that very likely he would—his anxiety level would go up and probably we'd have to up the dosage of valium that he's on right now, to deal with the anxiety. He could become very anxious to the point of becoming physically ill, maybe to the point of being hospitalized."

1. Appellant underwent counseling at the Bureau of Vocational Rehabilitation.

According to Wimberly, appellant was only suited for work that left him a great deal of freedom to work at his own speed with a limited amount of social contact (apparently such as the work he had previously done in distributing soda for the Canada Dry Corporation). Wimberly was then asked:

"If Mr. Deiss was physically and psychologically unsuited for this type of work do you know why he accepted it?"

To which he replied:

"I have a suspicion that he accepted it because his father probably pressured him into it. A great deal of the problem that Walter and I have been working with for some time have had to do with his relationship with his father, in fact the very disorder we're talking about is a disorder that begins when children have difficulty with their parents (inaudible)."

Wimberly was then asked about appellant's complaints about headaches, sleeplessness, nausea and diarrhea, and he indicated that these were caused by anxiety from the job with Gordon. According to the witness, appellant's anxiety would have led to an emotional breakdown. The witness concluded that he would have advised appellant to quit his job if he had been asked and that when appellant did quit it was "the psychologically healthy thing to do."

There are no new findings of fact made by the second referee who heard the case on remand. The board had an additional finding of fact that "at the time the claimant terminated his employment he was not under the care of a doctor and he was not advised by a doctor to terminate his employment." After re-emphasizing that appellant had not been advised by a physician that he must terminate his employment. The board concluded, "there was no competent evidence that the working conditions were so onerous as to leave him no other choice than to voluntarily terminate his employment."

The Commonwealth Court, after restating the proposition that the burden was on appellant to establish that he had no

real choice but to leave his employment, concluded as follows:

"The record reveals that Deiss was not advised by a physician to terminate his employment.[3] The testimony of the psychotherapist, who examined him after he quit, is of little evidentiary value as it does not adequately explain and buttress the health reasons as they existed on the date of his termination. *Eckenrod [v. Unemployment Compensation Board of Review]*, 15 Pa.Commonwealth Ct. 166 [325 A.2d 320] (1974), N. 3. See *Elshinnawy v. Unemployment Compensation Board of Review,* 12 Pa.Commonwealth Ct. 597, 317 A.2d 332 (1974); *Tollari v. Unemployment Compensation Board of Review,* 10 Pa.Commonwealth Ct. 589, 309 A.2d 833 (1973). It is clear that Deiss' unsupported statement that the working conditions adversely affected his health is insufficient to shoulder his burden. *Lego v. Unemployment Compensation Board of Review* [24] Pa.Commonwealth Ct. [569], 357 A.2d 701 (1976). After carefully reviewing the record, we find substantial evidence supporting the findings and decision of the Board.

"We affirm the Board.

"3 There may be a case where a claimant terminates while suffering from a mental disorder of such a nature as to mitigate his failure to consult a doctor before quitting. This is not such a case and falls under the general rule of *Eckenrod* [supra]."

Appellant filed a petition for allowance of appeal, which we granted on May 16, 1977.

Section 402 of the Unemployment Compensation Law provided, in relevant part:

"An employee shall be ineligible for compensation for any week . . .

\*　　\*　　\*　　\*　　\*　　\*

"(b)(1) in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . .." Act of December 5, 1936, P.L. 2987, § 402, as amended, December 5, 1974, P.L. 769, No. 261, § 2, 43 P.S. § 802.

██ "Cause of a necessitous and compelling nature" was best defined in *Sturdevant Unemployment Comp. Case,* 158 Pa.Super. 548, 556, 45 A.2d 898 (1946), where the court stated: [2]

". . . they connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith."

██ In *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977), we stated:

". . . 'good cause' for voluntarily leaving one's employment (i. e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner."

Further, ". . . possible aggravation of a nervous condition can be a necessitous and compelling cause for terminating work." *Kernisky v. Unempl. Comp. Bd. of Review,* 10 Pa.Cmwlth. 199, 202, 309 A.2d 181, 183 (1973); *McComb Unempl. Compensation Case,* 179 Pa.Super. 424, 116 A.2d 92 (1955).

 In cases such as the instant one, the party alleging that termination is based on "necessitous and compelling reasons" has the burden of proving the same. *Taylor v. Unemployment Compensation Board of Review, supra.* We believe that appellant has established on this record that his termination is based on necessitous and compelling reasons. Appellant introduced testimony of his psychotherapist who testified that appellant was emotionally unsuited for assembly line work. The psychotherapist also testified that, in his

**2.** The statute analyzed in *Sturdevant* used the term "good cause". The phrase "cause of necessitous and compelling nature" was substituted by the legislature for the words "good cause" in a 1955 amendment. We termed this modification "simply a matter of phraseology." *Pgh. Pipe & Coupling Co. v. U. C. B. R.,* 401 Pa. 501, 507, 165 A.2d 374, 377 (1960).

opinion, had appellant remained on the job, he very well may have suffered a nervous breakdown.

In recent years, the Commonwealth Court has set forth the following criteria requiring a claimant to (1) introduce documentation that a physician advised claimant to terminate prior to termination, *Eckenrod v. Unempl. Comp. Bd. of Rev.*, 15 Pa.Cmwlth. 166, 325 A.2d 320 (1974), (2) inform the employer of the health problems, *Elshinnawy v. Commonwealth*, 12 Pa.Cmwlth. 597, 317 A.2d 332 (1974), and (3) specifically request the employer to transfer him to a more suitable position within the company, *Tollari v. Unempl. Comp. Bd. of Review*, 10 Pa.Cmwlth. 589, 309 A.2d 833 (1973).[3] The referee, the board and the Commonwealth Court all based their denial of appellant's benefits on the failure to comply with the *Eckenrod* mandate. We believe, however, the *Eckenrod* is not an accurate statement of the law in this commonwealth.

In *Eckenrod, supra*, 15 Pa.Cmwlth. at 169, 170, 325 A.2d at 322, the Commonwealth Court stated:

"In support of his claim that a nervous condition forced him to leave his job, Eckenrod introduced into the record two letters from his doctor which state that Eckenrod is disabled due to a nervous condition. Unfortunately, these letters are dated nearly two months after Eckenrod's termination of employment, and are not sufficient to support his claim that he had a necessitous and compelling medical reason for terminating his employment. See *Elshinnawy v. Unemployment Compensation Board of Review*, 12 Pa.Cmwlth. 597, 317 A.2d 332 (1974). *There is no medical evidence in this record that Eckenrod was advised by a physician to terminate* his employment." (Emphasis added.)

However, in *Elshinnawy, supra*, 12 Pa.Cmwlth. at 600–601, 317 A.2d at 334, the court stated:

3. Appellant offered uncontradicted testimony that he did inform his employer of the health problems. Further, while appellant never requested a transfer, he testified that all jobs with Gordon involved assembly line work, so such a request would have been a futile gesture.

". . . In *Marzolf Unemployment Compensation Case,* 198 Pa.Super. 203, 206, 181 A.2d 867, 869 (1962), the Court stated: 'Since the claimant voluntarily terminated his employment the burden rests upon him to show cause of a necessitous and compelling nature for doing so. *Johnson Unemployment Compensation Case,* 182 Pa.Super. 138, 125 A.2d 458 (1956). Where the claimant does not consult a physician his unsupported statement that the work adversely affects his health is insufficient, of itself, to establish good cause for leaving. *Molton Unemployment Compensation Case,* 194 Pa.Super. 190, 166 A.2d 103 (1961); *Zielinski Unemployment Compensation Case,* 174 Pa.Super. 244, 101 A.2d 419 (1953).' In *Tollari v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 10 Pa.Cmwlth. 589, 592, 309 A.2d 833, 835 (1973), we stated: 'It is also true, however, that the "illness of a claimant may constitute a valid personal reason and good cause for leaving his employment within the meaning of Section 402(b) of the Unemployment Compensation Law." *McComb Unemployment Compensation Case,* 179 Pa.Super 424, 426, 116 A.2d 92, 93 (1955).' But in *Tollari* we also pointed out that in this type of case it is necessary for the claimant to show that his request for lighter work was based upon health reasons. *We also noted that a physician's statement obtained after* (emphasis in original) *the termination of employment is of little evidentiary value unless the statement adequately explains and supports the health reasons as they existed on the date of the termination.* The statement of Elshinnawy's physician does not adequately explain and support the health reasons as they existed on the date of Elshinnawy's termination of employment. There is no evidence that the physician ever examined Elshinnawy on or before August 1, 1972." (Emphasis added.)

We believe that the emphasized portion of *Elshinnawy* is controlling, as the relevant consideration is the claimant's health at the time of terminating employment. If a claimant realizes that either physically or emotionally he

is unable to continue working and he offers competent testimony that *at time of termination,* adequate health reasons existed to justify termination, we can perceive no reason to require claimant to prove that he was advised to quit his job.

In the instant case, appellant was under a psychotherapist's care for over a year before terminating his employment with Gordon. The psychotherapist testified that at the time of termination, appellant would have suffered a nervous breakdown had he continued his employment. This opinion was based on the results of over one year of analysis prior to appellant's termination of employment. We believe that the referee, the board of review and the Commonwealth Court all erred in holding the psychotherapist's testimony was of little evidentiary value. As appellant offered competent evidence to support his claim that he terminated employment for cause of a necessitous and compelling nature, he is entitled to benefits under the act.

The decision of the Commonwealth Court affirming the board's denial of unemployment compensation is reversed, and the matter is remanded to the board with direction that appellant's claim be allowed.