Julia Zellat, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued April 6, 1979, before Judges WILKINSON, JR., BLATT and MACPHAIL, sitting as a panel of three.

*Carrie Menkel-Meadow,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Gerald Gornish,* Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., May 9, 1979:

The issue in this unemployment compensation case is whether claimant has carried her burden of proving that she quit her position for a necessitous and compelling reason, *i.e.,* good and sufficient medical reasons. Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802 (b)(1). The Bureau of Employment Security and the referee each denied benefits. On appeal to the Unemployment Compensation Board of Review (Board), the claimant for the first time being represented by legal counsel, the Board assigned the case to a hearing officer to permit claimant another opportunity to offer evidence and for further consideration of claimant's medical evidence. The Board, after further consideration of the entire record denied benefits. We affirm.

Able counsel for claimant has properly emphasized the narrow issue on which she would have us reverse the Board—was the Board justified in concluding that the claimant had not presented adequate medical evidence that she had been advised it was necessary for her to leave her position. There is no doubt claimant was ill. Indeed, while on medical leave of absence on June 13, 1976 claimant had applied for unemployment benefits which were denied, covering a period from June 19 through August 14, for the reason that claimant was not available for work. This was unappealed. Nevertheless, less than a month later claimant refused an additional leave of absence, quit, and immediately applied for benefits on the grounds that while she can

do many jobs, she cannot do the ones available from her employer. We cannot say that under these circumstances the Board found that it would be necessary for the claimant to produce convincing medical testimony that it was necessary for her to leave this position. Although claimant produced testimony from three physicians, none met the Board's requirements. This is hardly surprising when one of claimant's physicians said that her condition was unrelated to her work and that at no time did he advise her "what she should or could do in reference to her situation."

Claimant rests her case primarily, if not exclusively, on our Supreme Court's decision in *Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132 (1977) and our decision in *Kernisky v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Court 199, 309 A.2d 181 (1973). The key feature of the *Deiss* opinion was that there was no requirement that medical advice recommending leaving the position be obtained *before* leaving. Here there was not only no medical advice to leave this position given before leaving, none was obtained later and offered even at the remand hearing for the purpose that showed quitting this position when a medical leave of absence was available was necessary. Indeed, claimant's own medical evidence indicated no such advice could be given.

The instant case differs from *Kernisky, supra,* in that there the Board found that the claimant had carried her burden of proving that she quit "because . . . the requirements of the job were aggravating her nervous condition," *id.* at 202, 309 A.2d at 183, even without medical testimony. Here the Board has expressly found otherwise.

While this is a close case, after a careful review of the record we are not in a position to find that this record does not support the Board's finding that

claimant has failed to meet her burden. This would be substituting our opinion for that of the Board. This we cannot do. *Roach v. Unemployment Compensation Board of Review,* 31 Pa. Commonwealth Ct. 424, 376 A.2d 314 (1977).

Accordingly, we will enter the following

ORDER

AND NOW, May 9, 1979, the Order of the Unemployment Compensation Board of Review, dated February 15, 1978, Decision No. B-153565, denying benefits is affirmed.