Lou E. Duprey, Petitioner *v.* Commonwealth of
Pennsylvania, Unemployment Compensation
Board of Review, Respondent.

Argued June 7, 1979, before Judges WILKINSON,
JR., MENCER and MACPHAIL, sitting as a panel of
three.

*Salli A. Swartz,* for petitioner.

*John T. Kupchinsky,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, October 15, 1979:

Lou E. Duprey (Claimant) appeals here from an order of the Unemployment Compensation Board of Review (Board) denying benefits to her. We reverse the Board.

Initially the Bureau of Employment Security granted benefits to Claimant. Richard Textiles (Employer) appealed and, after two hearings before a referee (the second being a remand hearing) the Board affirmed the referee's denial of benefits and adopted the referee's findings and reasoning that the Claimant voluntarily quit her employment without cause of a necessitous or compelling nature.

From a record that is confusing and which contains "inaudibles" at crucial points in the testimony, a practice which we strongly condemn, we ascertain the following pertinent facts. Claimant was employed as an inspector for her Employer on November 19, 1975. In May of 1976, she sustained a work-related injury. When her physician advised her that she should avoid lifting and other strenuous tasks, she asked her Employer for different work. Her Employer obliged by changing her job to that of a "unifill girl." While that job did not require lifting, it did require considerable walking and standing on concrete floors. Claimant again consulted her physician

about her physical discomfort and he diagnosed her condition as moderate to severe varicose veins of the lower extremities. While the record is not entirely clear, it appears that Claimant did work irregularly until January 10, 1977. Claimant testified that at her physician's instructions, she informed her Employer on January 17, 1977 that she would have to take a few weeks off due to her physical problems. The person who answered the phone apparently relayed that information to Claimant's supervisor. Later that week the Employer's representative called Claimant to tell her that before she returned to work she would have to have a physician's statement stating that she would be able to work on a regular basis. At that point Claimant secured a statement from her physician stating that Claimant should be excused from work from January 24, 1977 indefinitely and that she "should apply for disability and be seen by vocational rehabilitation." Claimant presented that statement to her Employer and did not return to work thereafter. The physician's statement was admitted as an exhibit in this case without objection.

The referee and the Board found that (1) Claimant voluntarily quit her work on January 10, 1977, (2) that she did not provide competent medical certification that she was advised to quit her employment prior to her termination thereof, (3) that she did not request alternate employment and (4) that "continuing work" was available had Claimant chosen to remain.

It is so well established that it hardly bears repeating that the findings of the referee and Board, if supported by substantial evidence and in the absence of fraud, are conclusive on us. *Stalc v. Unemployment Compensation Board of Review*, 13 Pa. Commonwealth Ct. 131, 318 A.2d 398 (1974). It is equally well established by this Court that physical disability

may constitute a necessitous and compelling reason for leaving one's employment. *Tollari v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 589, 309 A.2d 833 (1973). Finally, in *Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132 (1977) our Supreme Court held that "[i]f a claimant realizes that either physically or emotionally he is unable to continue working and he offers competent testimony that *at* [the] *time of termination,* adequate health reasons existed to justify termination, we can perceive no reason to require claimant to prove that he was advised to quit his job." *Deiss, supra* at 555-56, 381 A.2d at 136. (Emphasis in original.) Although the Board contends that the *Deiss* case is not controlling because it was decided subsequent to the Board's decision in the instant case, we must respectfully disagree. This Court is bound by that decision and it must be applied to the facts of this case even though the Board did not have the benefit of the Supreme Court's decision.

The Board contends in this appeal that (1) the physician's statement dated January 24, 1977 is not competent evidence and (2) Claimant has failed to meet her burden of proving that her medical problems constituted cause of a necessitous and compelling nature for voluntary termination of her employment.

It is argued that since the physician's statement doesn't specify the nature of Claimant's disability, it is incompetent. If the statement was incompetent, it should not have been admitted as a part of the record of the case. Having been admitted, the Board now has no basis to claim that it is not competent evidence. Moreover, in addition to the statement dated January 24, 1977, there are three other physicians' statements referring to the Claimant's physical condition *prior* to January 24. Finally, there is the testimony of the Claimant herself that she quit because of her physi-

cal condition. It is true that the referee need not believe the Claimant's testimony, yet all of the testimony including that of the Employer's representatives bears out the fact that Claimant had informed the Employer that she was having physical difficulties in January of 1977 and there is not even a scintilla of evidence in the record to indicate that this fact was not true.

Although the referee and Board found as a fact that the Claimant quit on January 10, 1977, all of the evidence in the case indicates that at least as late as January 17, 1977 Claimant had *not* quit and the Employer knew she had not quit.

To summarize we fail to find substantial evidence to support the referee's finding that Claimant voluntarily quit on January 10, 1977 and that she failed to provide competent medical certification that she was advised to quit prior to termination of her employment.

With respect to the question of whether or not Claimant met her burden of proof in this case, the record indicates that she told the Employer that she was quitting for physical reasons. Claimant did, in fact, have physical problems, and she presented statements from her physician indicating that her physical problems existed prior to termination. Indeed, a physician's statement dated March 7, 1977 admitted as a part of the record in this case states categorically, ''Lou Duprey left her last job because it was physically too strenuous for her. She has mild arthritis and varicose veins.'' In the face of the record, the Board's argument must fail.

Finally, we fail to find substantial evidence to support the finding that the Claimant did not request transfer to alternate work. The Employer's representative testified as follows in response to the referee's questions:

QL: . . . When she made this request from Junior Weaver, was she ever offered work that didn't involve standing or heavy lifting?

AE: *No she only worked for Junior Weaver a couple of days.* Actually, she was in a day and then out a day and she wasn't even fully trained on the job. And this is one reason we asked that we have something from the doctor saying that she would be able to work, you know, more or less continuously or more than one day a week or two days a week because of the fact that her training purposes even [sic]; it's hard to train a girl and when you're not fully trained, you can't judge whether you're going to be able to do a job or not.

QL: So her request to Junior Weaver that she be given some other kind of work than standing all day or heavy lifting—

AE: *I don't know anything about this*; I'd have to check that out. This is the first I've heard about that. (Emphasis added.)

From the foregoing we conclude that not only is there not substantial evidence to support a finding that the Claimant did not request a transfer to alternate work; on the contrary, there is evidence that she did make such a request.

Accordingly, we conclude that there is not substantial evidence in the record of this case to support the referee's findings of fact adopted by the Board. The case will be remanded for a calculation of benefits.

Judge WILKINSON, JR. dissents.

ORDER

AND Now, this 15th day of October, 1979, the order of the Unemployment Compensation Board of Review dated November 1, 1977, denying benefits to Lou E.

Duprey is reversed. Judgment is entered in favor of Lou E. Duprey and the case is remanded to the Board for a calculation of benefits.