Permagrain Products, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 19, 1981, before President Judge CRUMLISH and Judges WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*John T. Clary, Clary, Mimnaugh & McGonigle, P.C.,* for petitioner.

*Elsa D. Newman-Silverstine,* Assistant Attorney General, with her *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE WILLIAMS, JR., June 11, 1982:

Permagrain Products, Inc. (Permagrain) has appealed from an order of the Unemployment Compensation Board of Review (Board) granting unemployment benefits to claimant Robert A. Dixson. By its order, the Board affirmed a referee's decision that the claimant had "cause of a necessitous and compel-

ling nature" for voluntarily terminating his employment with Permagrain, and thus was not ineligible for benefits under Section 402(b)(1) of the Unemployment Compensation Law (Law).[1]

Claimant Dixson was employed by Permagrain as a laborer. He commenced his employment in January 1979, at which time he was assigned to a job that exposed him to chemical fumes. Shortly after he began work, the claimant started to experience soreness of the throat, nausea, and dizziness. Consequently, in March 1979, he consulted a physician, a Dr. Abbott, about the symptoms he had been experiencing. The claimant informed his employer that he had been having an adverse physical reaction to the chemical fumes in his work atmosphere, and requested a transfer to a more salubrious job assignment. The employer transferred him to the company's wood shop; and the claimant ceased to experience his former symptoms.

The claimant continued to work in Permagrain's wood shop until April 2, 1979. On that date, he was informed by his supervisor that he was to be reassigned to his former job. The reassignment was to take effect the following day, April 3, 1979; and was required because of a lack of work in the wood shop. Upon being advised of the imminent reassignment, the claimant reminded the employer of his health problems with the chemical vapors. The company then offered him an alternative job as a security guard. That position, however, would require him to occasionally clean dried chemicals from canister lids, apparently with a hose. According to the claimant, he had cleaned those lids before, and became sick in the process. For that reason, the claimant declined the alternative job offer and terminated his employment with Permagrain.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1).

On April 4, 1979, the claimant applied for unemployment compensation. The Bureau of Employment Security determined that he was eligible for benefits pursuant to Sections 401(d)[2] and 402(b)(1) of the Law. The employer appealed that determination to a referee, who, after a hearing, upheld the Bureau's action. When the Board affirmed the referee's decision Permagrain filed the instant appeal.

Before this Court, Permagrain's main thrust is a challenge to the legal efficacy of the evidence to support the referee's decision. Among the referee's findings was a determination that the claimant became ill after being in contact with certain chemicals used by his employer. The referee also found that: "Claimant was advised by his physician to refrain from work which brought him in contact with certain chemicals used by his employer." Those findings were based on a Doctor's Certification completed and signed by the claimant's physician, Dr. Abbott, at the request of the Bureau of Employment Security. The doctor certified that he treated the claimant on March 21, 1979 for sore throat, nausea, and dizziness. The certification also stated that the claimant suffered the symptoms after his exposure to certain chemicals, and that it was "medically advisable" for him not to be exposed to the chemical fumes again.

Giving Permagrain's brief a liberal reading, the employer argues that the medical information set forth in the Doctor's Certification was hearsay and, though unobjected to, could not support the referee's findings without corroborating evidence.[3] In so ar-

---

[2] 43 P.S. §801(d). This section requires that a claimant be "able to work and available for suitable work."

[3] At one point in its brief Permagrain takes specific aim at the referee's finding concerning the doctor's advice to the claimant. At another point in the employer's brief the challenge seems to be to the Doctor's Certification as a whole.

guing, the employer relies on our decision in *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976); and asserts, further, that no corroborating evidence exists in the record at bar.

It is true that our Court has stated that the information supplied by a Doctor's Certification is "hearsay as such." *Dorsey v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 479, 482, 399 A.2d 809, 810 (1979). In the instant case, however, the Doctor's Certification from Dr. Abbott was sufficiently corroborated by competent record evidence, at least insofar as the claimant's health status was concerned. Aside from the claimant's own testimony about the physical symptoms he suffered after exposure to the chemical fumes, there is supportive testimony in that regard from the employer's own witness. A Mr. Peter Henise, Permagrain's production manager, was asked by the referee if the company was aware that the claimant was having problems with the chemical fumes. Henise answered that question in the *affirmative*.[4]

Where an employee voluntarily terminates his employment, he must prove that he had necessitous and compelling reason for doing so, in order to be eligible for unemployment compensation. *E.g., Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132 (1977). If health problems are asserted as the reason for quitting, the claimant must meet three requirements: (1) offer competent evidence that at the time of his termination adequate health reasons existed to justify termination; (2) inform the employ-

---

[4] The referee's question and Mr. Henise's answer were as follows:

Q. Mr. Henise, was your company aware that Mr. Dixson was having problems with these fumes.

A. Yes, sir.

er of the health problem; and (3) specifically request the employer to transfer him to a more suitable position. *Id.; Ruckstuhl v. Unemployment Compensation Board of Review,* 57 Pa. Commonwealth Ct. 302, 426 A.2d 719 (1981). However, the claimant need not prove that he was medically advised to quit his job. *Deiss.*[5]

Given the evidence in the case at bar, we conclude that the claimant satisfied the first prong of the *Deiss* requirements; that is, he demonstrated by competent evidence that adequate health reasons existed to justify his termination of his employment. So too, the record clearly shows that, prior to quitting, he informed his employer of his health problem.

As for the third of the *Deiss* requirements, that the employee. request a transfer to a more suitable position, the evidence clearly establishes that the claimant's sojourn in the company's wood shop was the result of his request for reassignment after advising the employer of his health problem with the fumes. Once having made his request for a job assignment free of the chemical fumes, we can see no reason, on the facts of this case, why he would have to renew his request when the employer sought to re-expose him to chemicals.

As a final matter, Permagrain asserts that it was denied a fair hearing. Yet, the employer presents no legal argument in this respect, and relies solely on an allegation that "personnel of the Bureau undertook to contact various other employees of the Petitioner." We need not, and will not, consider a "point" so amorphously presented.

---

[5] It would seem to follow from this principle that the instant claimant had no *duty* to show that he was *medically advised to refrain from having contact with the chemicals.* Thus, the employer's challenge to the quality of the evidence on that point is moot.

For the reasons set forth in this opinion, the order of the Unemployment Compensation Board of Review is affirmed.

ORDER

AND Now, the 11th day of June, 1982, the order of the Unemployment Compensation Board of Review, at Decision No. B-174150, granting claimant benefits, is affirmed.

Judges MENCER and PALLADINO did not participate in the decision in this case.