Carmelo Tapia, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs February 3, 1983, to President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Robert S. Waldman*, for respondent.

*Joel G. Cavicchia*, Associate Counsel, with him *Richard L. Cole, Jr.*, Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 19, 1983:

Carmelo Tapia has appealed from a decision of the Unemployment Compensation Board of Review, which determined him ineligible for benefits pursuant to Section 402(b)(1) of the Unemployment Compensation Law.[1] The Board found that the claimant, a bakery worker, abandoned his employment without necessitous and compelling reason when he failed to report to work as scheduled after a six-month period of work-related disability.

The employer's testimony reflects the following version of the events. When the claimant, in late March of 1980, reported that he was able to return to work after a period of disability due to back injury, he was advised that his former position, a supervisory one, was no longer available. He was offered work as a "moulder" or "oven man," which involved moving pans weighing approximately 25 pounds each. The claimant rejected this work due to continuing back pain and the lifting involved in the jobs. Then the claimant was offered a "relief" job called a "filler man" position, which involved much the same work as the moulder and oven man positions, but for shorter periods of time. The claimant, according to the employer, agreed to the filler man position, and agreed that he would be put on the next available work sched-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1). Under this section, a claimant is disqualified from receiving benefits if he has quit his employment without "cause of a necessitous and compelling nature."

ule. On April 10, 1980, the employer's production superintendent telephoned the claimant and told him to report to work on April 13, 1980. The claimant agreed to report for the filler man job as scheduled. However, the claimant did not report for work on April 13th, and when the foreman telephoned the claimant's home on that date, he was informed that the claimant had returned to Puerto Rico. The employer had no further contact with the claimant until a year later at the referee's hearing in this appeal.

The claimant's version of what occurred diverges sharply from the employer's testimony. He testified that when he advised the employer that he was ready to return to work, he was told that the only work available for him involved working in the oven. He told the superintendent that he was incapable of performing that work due to his back injury. Thereupon, according to the claimant, the superintendent stated that his choices were to either accept the work in the oven or quit. The claimant quit.

As between these two conflicting versions, the Board chose to believe the employer. Specifically, the Board found that the employer offered, and the claimant accepted, a "filler man" position, which was "somewhat lighter" than the oven man job which the claimant rejected due to his back injury. The Board further found that the claimant agreed to report to work on April 13, 1980 to assume the filler man position. Ultimately, the Board found that the claimant voluntarily terminated his employment by not reporting to work as scheduled, and by failing to contact the employer again.

In support of his appeal, the claimant argues that there is no evidentiary basis for the Board's finding that the filler man position was "lighter" than the other positions offered the claimant, and was "compatible with the claimant's back problem." He con-

tends that the employer conceded the unsuitability of the moulder and oven man positions, as well as the similarity of the filler man position to the moulder and oven man jobs. Therefore, he argues, a determination that the relief job was suitable is not sustainable on the record. We believe, however, that the claimant's argument misfocuses the issue in this case. The pivotal issue here is not whether the filler man position was suitable, but rather whether the claimant failed to act in ways designed to maintain the employment relationship. Even assuming that the offered work was not suitable, the Board's findings and the competent evidence compel a conclusion that the claimant did not satisfy his obligation to maintain his employment when he failed to report for work which he agreed to accept.

In *Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982), the Pennsylvania Supreme Court set out the respective obligations of employer and employee when the employee claims inability to perform his assigned work due to medical reasons. The Court said that once the employee has communicated to the employer his medical problem and his inability to perform the assigned work, the responsibility is on the employer to attempt to provide suitable work. Thus, it is clear that once the claimant advised his employer that the residual effects of his back injury prevented his performing heavy lifting, it was the employer's obligation to find work for him consistent with his medical disability. In the event that the employer was unable to provide suitable work, the claimant would have been justified in quitting. However, one significant factor distinguishes this case from the circumstances in *Genetin:* the claimant, according to the Board's findings, accepted alternative work offered by the employer and then failed to report. This finding is supported by

552

substantial evidence, and is therefore conclusive. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). The significance of the finding lies in the fact that we have consistently held that acceptance of a job constitutes an admission of the initial suitability of the work. *E.g., National Aluminum Corp. v. Unemployment Compensation Board of Review*, 59 Pa. Commonwealth Ct. 359, 429 A.2d 1259 (1981).

Having accepted the relief position, it was incumbent upon the claimant to report as scheduled, if for no other reason than to test his capacity to perform the job he agreed to. If after trying the relief position he found that he was incapable of performing, he would have been justified in quitting if no other work was available. *See National Aluminum Corp.*

If, prior to reporting, he had second thoughts about his ability to perform the relief position, it was his obligation, at the very least, to discuss those concerns with the employer. That is the only way that the employer, who relied upon the claimant's agreement to an alternative job, would have had an opportunity to try to accommodate his medical problem.

Because the claimant neither reported for work nor recontacted the employer to discuss any new or continuing concerns about the suitability of the filler man position, we are constrained to hold as a matter of law that he has failed to demonstrate that his voluntary leaving was the result of ''circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.'' *Taylor*.[2]

---

[2] The burden of proof under 402(b)(1) is on the claimant. *Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 451 A.2d 1353 (1982) ; *Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132 (1977).

Accordingly, the decision and order of the Unemployment Compensation Board of Review is affirmed.

ORDER

AND Now, the 19th day of July, 1983, the order of the Unemployment Compensation Board of Review at Decision No. B-197751 is affirmed.