528 A.2d 1050

Beverly A. Hoffman, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 7, 1987, to Judges MAC-PHAIL, DOYLE and BARRY, sitting as a panel of three.

*Edith Benson,* for petitioner.

*Jonathan Zorach,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, July 22, 1987:

This is an appeal by claimant, Beverly A. Hoffman, from the Unemployment Compensation Board of Review's reversal of the referee's decision to grant claimant benefits under Section 402(b)(1) of the Pennsylvania Unemployment Compensation Act (Act), Act of Dec. 5, 1936, P.L. 2987, *as amended,* 43 P.S. 802(b)(1) (relating to voluntarily leaving work for necessitous and compelling cause).

Claimant was employed as a custodial worker for Polk Center (employer) when she was hospitalized three times between January of 1985 and May 31, 1985, her last day of work. She resigned on May 31, 1985 informing employer that she was no longer able to work due to serious health problems.[1] The referee found that claimant's doctor advised claimant to seek lighter work duties and imposed limitations on her permitted lifting, stooping and bending. The referee further found that although there were no light duty jobs available when claimant terminated her employment, employer could have arranged for the availability of lighter duties for a limited time had claimant so requested. The referee granted benefits. The Board reversed finding that claimant "did not take the necessary steps to preserve her employment". This legal conclusion—one which the referee failed to make—was drawn from the referee's findings of fact Nos. 6 and 7 which read:

> 6. The claimant did not provide her employer with any medical documentation attesting to the severity or presence of a medical condition.

---

[1] The referee found that claimant had been hospitalized on three occasions for hypertension and a liver problem before she was discharged. This finding is undisputed.

7. The claimant did not inform her employer of the fact that she could perform work with limitations.

On appeal claimant contends that the Board erred because she communicated her medical problems and inability to perform her regular duties to her employer and was not required to seek alternate employment where such a gesture would have been futile. We agree and reverse.

Our scope of review is limited to whether the Board's findings are supported by substantial evidence, or whether it committed a violation of claimant's constitutional rights or an error of law. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. The burden of establishing the existence of necessitous and compelling cause is on the employee. *Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982). It is well established that medical problems can create necessitous and compelling cause to leave employment. *Deiss v. Unemployment Compensation Board of Review,* 475 Pa. 547, 381 A.2d 132 (1977). However, the employee has an obligation to communciate his medical problems to his employer. In *Genetin* our Supreme Court stated that:

> Where an employee because of a physical condition, can no longer perform his regular duties, he must be available for suitable work, consistent with the medical condition, to remain eligible for benefits. However, once he has communicated his medical problem to the employer and explained his inability to perform the regularly assigned duties, an employee can do no more.

*Id.* at 130-131, 451 A.2d at 1356.

In this case, the Board found that the claimant had worked for several months in ill health, then advised

employer that she was terminating because she was too ill to continue. Claimant never provided employer with medical documentation as to the presence or severity of the medical condition and did not inform employer that she could work within certain limitations. These findings are supported by the testimony of employer's witness, Mrs. Janet Proper, the custodial supervisor who met with claimant when she resigned. We do not believe that under *Genetin*, a claimant's only duty is to communicate that she is in ill-health and quitting. The *Genetin* decision interpreted the Act to place the onus on the employer, not the employee, to initiate the quest for an alternate position but an employer cannot undertake such a responsibility unless it is aware that the employee is permitted to do *some* type of work. Claimant cannot be considered to have accurately communicated her medical condition to employer in a manner which would enable a transfer to a lighter duty position.

Claimant next argues that it would have been futile for her to be specific about her limitations because others before her in a similar situation were denied light duty work and were forced to resign as a result of health problems. In *Genetin* our Supreme Court, if not explicitly, then inferentially, held that the employee may be excused from making himself available for employment when the record suggests that it would have been futile.[2]

This Court addressed this exact issue in *Fox v. Unemployment Compensation Board of Review,* 105 Pa. Commonwealth Ct. 7, 522 A.2d 713 (1987). In that

---

[2] The record in *Genetin* suggested that petitioner's request for a more suitable position may have been futile. The employer's representative testified that they had no positions available that were regarded as light work and that petitioner knew that there were no other light work jobs available. *Genetin* at 131 n. 4, 451 A.2d at 1356 n. 4.

case, the claimant who was pregnant was advised by her doctor to refrain from standing more than one hour at a time, lifting over fifteen pounds and coming in contact with toxic fumes. Although not advised by her doctor to do so, she quit her job as an ice cream counter clerk without communicating her specific limitations to her employer. In response to her argument that such communication would have been futile, we ruled that an employer must be afforded an opportunity to accommodate a claimant's problem through an explanation by the claimant of the specific limitations. We have come perilously close to that situation here but the critical distinguishing factor which precludes an exact analogy is that in the case before us the record itself demonstrates conclusively in the form of an admission by the employer's representative and claimant's supervisor that such a request on the claimant's part would have been futile. Lanny Rogers, Personnel Analyst, who met with claimant after she was informed that she was ineligible for workmen's compensation, informed her that light duty jobs were available for a limited time for those having non-work related injuries, provided that the injured employee requested such a position from the supervisor. Claimant's supervisor, Mrs. Proper also testified:

QR:   In other words you're saying had the claimant stated she needed easier work for a maximum of four weeks it could have been provided?

AEW1:   (Mrs. Proper)

If she would have said she needed it for a maximum set date and states specifically what she could do, with no lifting it would have been extremely difficult to provide anything if not impossible.

QR:   So what you are saying in essence is that under these limitations as specified by the

doctor there probably would not be easier work or light duty work available?

AEW1: (Mrs. Proper)
Yes.

We, therefore, conclude from the evidence that Finding of Fact No. 10 which reads "[t]he employer did not have any light duty work available for the claimant" is supported by substantial evidence and speaks to the futility of claimant making herself available for light duty work. We similarly conclude that Finding of Fact No. 11 which reads "[t]he employer could have arranged for the availability of lighter duties for a limited time had such been requested" is without support.

We believe this scenario fits squarely within the reference in *Genetin* to a claimant's act of engaging in useless behavior in order to preserve employment where employment could not have been preserved. The aforementioned testimony clearly suggests that, essentially, no light duty work would have been available to an employee with claimant's severe limitations.

Thus, although an employer is under no duty to offer alternative employment to an employee when the employee's account of her medical condition is admittedly vague, this failure to properly communicate is not fatal to eligibility under Section 402(b)(1) when evidence in the record shows that no suitable work would have been available.

We reverse.

## ORDER

Now, July 22, 1987, the order of the Unemployment Compensation Board of Review, dated October 18, 1985, at No. B-244104, is reversed.

———

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent because I do not believe that the majority opinion adequately distinguishes our deci-

sion in *Fox v. Unemployment Compensation Board of Review*, 105 Pa. Commonwealth Ct. 7, 522 A.2d 713 (1987). We stated in *Fox*:

> [I]t is well-established that a claimant has an obligation to communicate her medical problems to her employer and to *explain* her inability to perform her regularly assigned duties. . . . Claimant's argument that advising her Employer of her medical limitations would be futile misses the point. Only through communication can an employer be afforded an opportunity to *accommodate* a claimant's problem by offering suitable work. . . . Moreover, a claimant would not necessarily be aware that an employer *has* suitable work because a suitable position may in fact be one specially created for the claimant.

*Id.* at 10 , 522 A.2d at 715 (citations omitted and emphasis in original).

First, our review of the paperbooks in *Fox* discloses that the same admission, *i.e.*, a supervisor's statement that no light duty work would have been available had claimant asked for it, was present in that case. Second, unless there is communication by a claimant, the employer loses the opportunity to create a job. In other words, even though no existing job may be available, *Fox* teaches that an employer must be given the opportunity to establish a suitable position. Additionally, where no present job exists, a supervisor might himself or herself be unaware of the feasibility of creating one. *Fox,* by its reasoning, encourages both mitigation of damages by an employer and conservation of the unemployment compensation fund. Such aims are to be encouraged. I believe that, by reading the case in such a restrictive manner, the majority frustrates these twin goals.