# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph J. Babirad,  :
               Petitioner  :
                :
           v.  :  No. 1042 C.D. 2016
                :  Submitted:  November 18, 2016
Unemployment Compensation Board  :
of Review,  :
             Respondent  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**        **FILED:  February 22, 2017**

Joseph J. Babirad (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) finding Claimant ineligible for benefits pursuant to Section 402(b) of the UC Law (Law).[1] Claimant

---

[1] Act of December 5, 1936, Section Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b), which provides, in relevant part:

> An employe shall be ineligible for compensation for any week--
> (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act: Provided, [t]hat a voluntary leaving work because of disability if the employer is able to provide other suitable work, shall be deemed not a cause of a necessitous and compelling nature . . . .

asserts the Board erred in finding he did not have a necessitous and compelling reason to voluntarily quit. Finding no errors of law, abuse of discretion, or procedural infirmities, we affirm.

Claimant worked at Front Line Flagging, Inc. (Employer) as a full-time stager from 2012 until March 7, 2016. (Board Decision, Findings of Fact (FOF) ¶ 1.) On March 7, 2016, Employer advised Claimant that he could no longer work as a stager, and he was being moved to the general frack site. (FOF ¶ 12.) The reassignment came a couple of weeks after a verbal altercation Claimant had with a co-worker and Employer's Operations Manager. (FOF ¶¶ 4-9.) Claimant suffers from bipolar disorder, which previously required him to take leave under the Family and Medical Leave Act (FMLA).[2] (FOF ¶ 2.) Aware of this condition, Employer offered Claimant a position as a squatter, which Employer claimed was the least stressful position at the frack site. (FOF ¶¶ 13-14.) Claimant refused to accept the position because he believed it would be too stressful and voluntarily quit his employment.[3] (FOF ¶¶ 15-16.) Thereafter, Claimant filed an application for UC benefits, asserting he left his employment for health reasons. (Claimant Questionnaire, R. Item 3.) The local UC Service Center found Claimant not ineligible for benefits. (Notice of Determination, R. Item 9.) Employer appealed, and a hearing was held before a UC Referee (Referee) on May 9, 2016, following which the Referee concluded Claimant was ineligible for benefits under Section 402(b). (Referee Decision at 2-3.) Claimant appealed to the Board, which, based

---

[2] 29 U.S.C. §§ 2601-2654.

[3] Claimant maintains he went on FMLA leave after being transferred to the squatter position. However, he does not dispute that this case should be analyzed under Section 402(b) as a voluntary quit.

on the above findings of fact, affirmed.[4]  (Board Decision at 3.)  Claimant now petitions for review of the Board's Order.[5]

Under Section 402(b) of the UC Law, "[w]here a claimant has voluntarily quit employment, in order to obtain benefits, [he] must show that [he] left [his] employment for necessitous and compelling reasons." Collier Stone Co. v. Unemployment Comp. Bd. of Review, 876 A.2d 481, 484 (Pa. Cmwlth. 2005). Here, it is undisputed that Claimant voluntarily left his employment. Therefore, the burden is on Claimant to show that he had a necessitous and compelling reason to do so. Latzy v. Unemployment Comp. Bd. of Review, 487 A.2d 121, 122 (Pa. Cmwlth. 1985). To satisfy this burden, Claimant must demonstrate that: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve [his] employment." Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). Whether a claimant had necessitous and compelling reasons for terminating his employment is a question of law subject to review by this Court. Wise v. Unemployment Comp. Bd. of Review, 111 A.3d 1256, 1261 (Pa. Cmwlth. 2015).

---

[4] The Board also found Claimant ineligible for benefits for the week ending February 20, 2016, during which time Claimant took a leave of absence after the verbal altercation at work. Because Claimant does not challenge this determination, we will limit our review to the denial of UC benefits beginning with his separation from employment on March 7, 2016.

[5] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

3

A claimant's medical problems can constitute a necessitous and compelling reason to voluntarily separate from one's employment. Wheelock Hatchery, Inc. v. Unemployment Comp. Bd. of Review, 648 A.2d 103, 107 (Pa. Cmwlth. 1994). For a claimant to meet his burden on health-related grounds, he must show, through competent and credible evidence, the following: "(1) health reasons of sufficient dimension compelled the [claimant] to quit; (2) the [claimant] informed the employer of the health problems; and (3) the [claimant] is able and available for work if [his] employer can make a reasonable accommodation." Watkins v. Unemployment Comp. Bd. of Review, 65 A.3d 999, 1004-05 (Pa. Cmwlth. 2013) (citing Lee Hosp. v. Unemployment Comp. Bd. of Review, 637 A.2d 695, 698 (Pa. Cmwlth. 1994)). "[O]nce [a claimant] has communicated his medical problem to the employer and explained his inability to perform the regularly assigned duties, [he] can do no more." Genetin v. Unemployment Comp. Bd. of Review, 451 A.2d 1353, 1356 (Pa. 1982). Instead,

> [t]he availability of an employment position, the duties expected to be performed by one serving in that capacity, and the desirability of that individual for service in that capacity are managerial judgments over which the employee has no control. As long as the employee is available where a reasonable accommodation is made by the employer, that is not inimicable to the health of the employee, the employee has demonstrated the good faith effort to maintain the employment relationship required under the [UC Law].

Id. Thus, once a claimant makes an employer aware of such health problems, the burden shifts to the employer to establish that it made a reasonable attempt to identify and propose possible accommodations for the claimant's health problems. Watkins, 65 A.3d at 1005 (citing Lee Hospital, 637 A.2d at 699).

4

Here, Claimant argues that the Board erred in finding him ineligible for benefits because he had a necessitous and compelling reason to voluntarily quit his employment based upon his health condition. More specifically, Claimant asserts he provided competent evidence that: (1) adequate health reasons existed to justify his quit; (2) Employer was aware of these health concerns; and (3) Claimant made a reasonable effort to maintain his employment. (Claimant's Br. at 15-17.) The Board disputes that Claimant made a reasonable effort to maintain his employment.[6] (Board's Br. at 10.)

The Board found Employer offered Claimant an alternative position that was the least stressful at the frack site, Claimant refused because he thought the position would be too stressful, and Claimant voluntarily left his employment as a result. (FOF ¶¶ 13-16.) Based on these findings, the Board determined Claimant failed to establish he was able and available to work with a reasonable accommodation and did not make a good faith effort to maintain his employment. (Board Decision at 3.) We will, therefore, examine the record to determine whether substantial evidence exists to support the Board's findings and whether those findings support the legal conclusion that Claimant is ineligible for UC benefits under Section 402(b). Before doing so, it bears emphasis that

> [i]t is irrelevant whether the record contains evidence to support findings other than those made by the [Board]; the critical inquiry is whether there is substantial evidence in the record to support the findings actually made, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[6] At the Referee hearing, Employer contested all three elements Claimant must prove to be entitled to benefits. (Hr'g Tr. at 18-19, R. Item 16.) The Board concedes the first two elements but disputes the third. (Board's Br. at 10.)

5

Wise, 111 A.3d at 1262 (citing Phila. Gas Works v. Unemployment Comp. Bd. of Review, 654 A.2d 153, 157 (Pa. Cmwlth. 1995)). "On review, this Court examines the evidence in the light most favorable to the prevailing party, and gives that party the benefit of all inferences that can be logically and reasonably drawn from the testimony." Id. (citing Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603, 607 (Pa. Cmwlth. 2011)).

At the hearing, Claimant, who was unrepresented at the time, testified that a couple of weeks after a heated verbal altercation with a co-worker and Employer's Operations Manager, he was told he could no longer work in staging and was being reassigned to the frack site.[7] (Hr'g Tr. at 7, R. Item 16.) He had worked in staging since he returned from FMLA leave in February 2015. (Id. at 12.) Claimant attributed his prior FMLA leave to working at the frack site. (Id.) He maintained he was not able to return to work at the frack site now for this same reason. Specifically, he testified he could not control himself or his emotions, and anxiety and panic would set in because of the hectic nature of the frack site and the continual CB radio chatter, in particular. (Id. at 7.) Claimant gave conflicting testimony as to whether he actually tried to work the squatter position when it was offered to him. On the one hand, he testified:

> I tried to work that *site* when I went back after this incident. I worked it one night and at the beginning of that shift even [Employer's Vice President[8]] rode up on me at the beginning of that shift. Pulled in next to me and I was already going apey,[9] but not even ten minutes into

---

[7] The staging site is located off-site, usually at a gas station. (Hr'g Tr. at 9.)

[8] Employer's Vice President is also Claimant's brother.

[9] When asked what he meant by "apey," Claimant explained his bipolar condition was aggravated and he became highly agitated. (Hr'g Tr. at 7-8.)

6

that shift because the radio traffic, nobody could get a word in edgewise.

Id. (emphasis added). On the other hand, he testified:

> So after they had told me that I can't no longer work staging, the only job I could have is a frack site, I told them I'm going to have to take time off on my FMLA because I can no longer work them sites.

Id. This latter testimony is consistent with the testimony of Employer's Vice President, who testified that after Claimant stopped reporting to work following his removal from staging, Vice President received a text message from Claimant stating he was taking FMLA leave. (Id. at 16.) When Vice President advised Claimant that other positions existed at the general well site that he could work, Claimant told Vice President he could not do it because it was too stressful. (Id. at 16-17.)

Operations Manager testified there are three other positions within Employer besides staging.[10] One was roadwork, which Claimant acknowledged he could not do. (Id. at 9, 13.) Another was a pad position, where employees oversee traffic, make sure it is moving, and oversee other flaggers working. (Id. at 13.) The last was a general squatter position, which Operations Manager described as "very situational":

> Sometimes you're just sitting in your vehicle communicating on the CB your entire shift. Sometimes you're out of your vehicle. If there would be an emergency or if you would have to stop traffic for some

---

[10] Operations Manager described staging personnel as "getting all the information from the drivers as they are coming in to staging, writing them down in the correct order, communicating with your other flaggers when need be and then also with the sand coordinator when they do lead trucks." (Hr'g Tr. at 13.)

7

reason, you'd have to be out of the vehicle for possibly a split second up to, you know, a couple hours when need be.

(Id.) Operations Manager said the pad positions can be "very stressful," and staging can be "stressful at times" whereas the squatter position "would probably be the least stressful." (Id.) Vice President also testified the squatter position is not stressful. (Id. at 17.) Vice President stated that Employer was willing to put Claimant in any position, but Claimant was insistent upon remaining in the staging position. (Id.)

Based upon the above testimony, we find ample support for the Board's finding that Employer provided Claimant a reasonable accommodation for his medical condition by offering him the least stressful position available. Therefore, we must now determine whether, in light of Employer's reasonable accommodation, Claimant took the necessary steps to preserve his employment relationship.

An employee must take "reasonable steps to preserve the employment relationship." Nolan v. Unemployment Comp. Bd. of Review, 797 A.2d 1042, 1046 (Pa. Cmwlth. 2002). This means that an "employee may not reject a proposed accommodation out of hand; repudiation must be grounded upon particularized objections to the work environment." Taraschi v. Unemployment Comp. Bd. of Review, 510 A.2d 400, 402 (Pa. Cmwlth. 1986). In Sankey v. Unemployment Compensation Board of Review, 425 A.2d 52 (Pa. Cmwlth. 1981), a claimant sought UC benefits after quitting his job as a department manager at a department store because of his hypertensive cardiovascular disease. His physician advised him that the stress and pressure of his job aggravated his condition. Id. at 53. The store manager offered him a position as a commissioned salesperson, believing it was compatible with his medical condition in that the stress and

8

pressure of a department manager would be alleviated. Id. The claimant, however, rejected the offer, stating that such work would continue to aggravate his medical condition and opted to voluntarily quit. Id. A referee and the Board found him ineligible for UC benefits, and this Court affirmed. The Court noted that a claimant must make an attempt to perform the alternative work before quitting. Id. at 54.

Similarly, in Wagner v. Unemployment Compensation Board of Review, 407 A.2d 146, 148 (Pa. Cmwlth. 1979), we held the claimant was properly found to be ineligible for UC benefits when the claimant testified his employer offered him lighter work to accommodate his physical disability, but he refused "because he did not think that [e]mployer's plan would work." We stated:

> Obviously, we can not leave it up to a claimant to make his own determination of whether lighter work is in fact available. If it was offered, he is duty-bound to try it before he concludes with justification that it was not available. After he has made that effort a proper determination can be made whether the work offer is within the claimant's physical capability.

Id.; see also Tapia v. Unemployment Comp. Bd. of Review, 462 A.2d 915, 917 (Pa. Cmwlth. 1983) (holding claimant would have been justified in quitting *if after trying the other position*, he found himself unable to perform it because of his medical condition).

Here, it does not appear as though Claimant ever attempted the squatter position, which Employer's witnesses described as the least stressful position available. Although Claimant asserts in his brief he did work after the verbal altercation and transfer, his testimony, at best, establishes he attempted to work at

9

the frack site, but not necessarily in the squatter position.[11] The Board asserts that Claimant simply turned down the accommodation and opted to take FMLA leave. The Board's contention is consistent with Employer's witnesses' testimony set forth above and Claimant's admission that his last day of work was March 7, 2016, which was the day he met with Employer and was informed of the reassignment. (Hr'g Tr. at 6-7.) It is also consistent with Claimant's testimony that after he was told he could not stay in staging, he told Employer he would take FMLA leave. (Id. at 7.)

The Board chose to accept the evidence that established that Claimant refused to perform the squatter position. As in Sankey and Wagner, Claimant did not make an effort to try the reasonable accommodation offered by Employer. Therefore, Claimant was not able and available to work with a reasonable accommodation and did not make a good faith effort to maintain his employment. Accordingly, the Board did not err in concluding Claimant did not meet his burden of proof under Section 402(b).

For these reasons, the Order of the Board is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[11] (See Hr'g Tr. at 7 ("I tried to work that *site* when I went back after this incident.") (emphasis added).)

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph J. Babirad,                                  :
                        Petitioner                  :
                                                    :
            v.                                      :    No. 1042 C.D. 2016
                                                    :
Unemployment Compensation Board                     :
of Review,                                          :
                        Respondent                  :

## O R D E R

NOW, February 22, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge